## THE ALABAMA.

*(District Court, S. D. New York.* December 12, 1883.)

SLIP—ANCHOR—NEGLIGENCE—DAMAGE FROM.

A vessel throwing an anchor in shallow water in a large slip or basin where other vessels are in the habit of coming and going, without a buoy, and at a considerable distance from the vessel, and with nothing to indicate the presence of the anchor in the spot where it lies, is liable for the injury caused to another vessel which runs upon it without notice.

In Admiralty.

*E. D. McCarthy,* for libelant.

*Taylor & Parker,* for respondent.

BROWN, J. The libel in this case was filed by the owner of the steam-tug Robert Lockhart, to recover for damages caused to the propeller of the tug from running upon a concealed anchor of the scow Alabama, in what is known as the California dock, in Jersey City, on the twenty-sixth of November, 1880. The California dock is a slip or basin some 500 or 600 feet wide, between two piers, and extending back about 1,000 feet. About midway in the length of the dock, and about 150 feet south of the northerly pier, there was a coffer-dam moored to piles. The scow Alabama backed in and fastened her stern to the coffer-dam and dropped an anchor about 100 feet forwards of her bows, and this was about 100 feet inside of the outer end of the dock. The tug Lockhart, between 6 and 7 o'clock in the morning, had landed a tow at the coffer-dam, a usual place for such landings, and in coming out of the slip, the water being shallow, her propeller ran upon the anchor, causing the tug considerable damage. There was no bouy at the anchor; the light intended as an anchorlight was near the stern of the scow, but not at the height required by the rules for an anchor-light, and no light was observed by the pilot of the Lockhart.

I cannot doubt, upon the evidence, that the anchor belonged to the Alabama. The place of collision corresponded with the place at

which the claimants stated that their anchor was dropped; no other vessel was shown at anchor there at the time. When the contact with the propeller took place the scow's chain at her bows was tautened. It was proved that schooners and other vessels occasionally dropped anchor for a short time while waiting for orders in this broad slip or basin, but none extending such a distance from the vessel. As the tug approached the scow there was nothing to indicate any anchor thrown out at any considerable distance from it. Her chain was perpendicular, and there was no buoy at the anchor. Sailing vessels and tugs were accustomed to go in and out, and there was nothing in this case to give warning of the danger from the scow's anchor in shallow water, nearly 100 feet distant from her. Under the maritime rule, from an ancient period, this was clearly negligence for which the scow is answerable. By article 28 of the Laws of Wisbuy it was provided that "no master of a ship shall lie at anchor in a haven without fastening a buoy to his anchor, to give notice to others where it is. If he omits to do so, and any damage is sustained by it, he is obliged to make it good."

In the case of *Phila. W. & B. R. Co.* v. *Ph. & H. de G. S. T. Co.* 23 How. (U. S.) 209, 216, the supreme court say: "It is a rule of maritime law from the earliest times 'that if a ship run foul of an anchor left without a buoy, the person who placed it there shall respond in damages.'" 1 Emerigon, 417; 2 Browne, Civ. & Adm. L. 203.

Decree for libelant with costs, with an order of reference to compute the damages.